**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CARLA MICHELLE WHITE,**

    **Plaintiff,**

**-vs-**                                                                                     **Case No. 6:13-cv-1190-Orl-22DAB**

**Commissioner of SOCIAL SECURITY**
**ADMINISTRATION,**
    **Defendant**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for Supplemental Security Income and disability insurance benefits. For the reasons set forth herein, it is **respectfully recommended** that the decision of the Commissioner be **AFFIRMED.**

**Procedural History**

Plaintiff applied for a period of disability and disability insurance benefits and for supplemental security income, alleging that she became unable to work on January 30, 2010 (R. 140-150). The agency denied Plaintiff's applications initially and upon reconsideration, and she requested and received a hearing before an administrative law judge ("the ALJ"). The ALJ issued an unfavorable decision, finding Plaintiff to be not disabled (R. 11-33). The Appeals Council declined to grant review (R. 1-6), making the ALJ's decision the final decision of the Commissioner.

Plaintiff timely filed her complaint in this action, and the matter has been referred to the undersigned United States Magistrate Judge. The matter has been fully briefed and the case is now ripe for review pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

**Nature of Claimed Disability**

Plaintiff claims to be disabled due to the following conditions: "L/eye; hbp; shunt (stomach); fluid on brain, back, memory, chronic pain, migraines, anxiety, acid reflux." (R. 244).

*Summary of Evidence Before the ALJ*

Plaintiff was forty two years old at the time of the ALJ's decision (R. 25), with a limited education (ninth or tenth grade) (R. 245, 573) and past relevant work experience as a housekeeper, bus person, and fast food worker (R. 25).

The medical evidence relating to the pertinent time period is well detailed in the ALJ's opinion and in the interest of privacy and brevity will not be repeated here, except as necessary to address Plaintiff's objections. In addition to the medical records of the treating providers, the record includes Plaintiff's testimony and that of a Vocational Expert ("the VE"), written forms and reports completed by Plaintiff, and opinions from state agency consultants. By way of summary, the ALJ determined that Plaintiff had the severe impairments of: pseudotumor cerebri status post lumboperitoneal shunt, facet arthritis at L4-5, degenerative disc disease of the cervical spine, left sided blindness, bilateral optic atrophy secondary to pseudotumor cerebri (20 CFR 404.1520(c) and 416.920(c))(R. 16-17); and the record supports this uncontested finding. The ALJ determined that through the date of the decision, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 19). The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work, noting that the claimant:

> is able to sit for 1 hour without interruption for total of 7 hours in an 8-hour work day and stand/walk for up to 30 minutes without interruption for total of up to 4 hours in an 8-hour work day. She is able to lift/carry up to 20 pounds occasionally and up to 10 pounds frequently. She is blind in the left eye. She is limited to occasional bending, stooping, stair climbing, crouching and kneeling. She is precluded from crawling or climbing ladders, ropes or scaffolds. She is not to work around unprotected heights or

> moving, hazardous machinery. She is not to work around cutting hazards such as using sharp knives.

(R. 19).

The ALJ determined that Plaintiff could not return to her past relevant work (R. 25); however, with the assistance of a vocational expert, the ALJ found that other work existed in significant numbers that Plaintiff could perform (R. 25-6), and therefore, the ALJ found Plaintiff was not disabled.

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff raises several issues on review, contending that: 1) the ALJ failed to apply the correct legal standards in evaluating Plaintiff's mental impairment; 2) the ALJ did not apply correct legal standards "when he found significant right eye limitations, but included no right eye limitations in his findings at steps four and five of the Sequential Evaluation Process;" 3) the ALJ did not apply correct legal standards to Plaintiff's claimed impairments of anemia and obesity; and 4) the ALJ did not apply correct legal standards to Plaintiff's claimed medication side effects. The Court evaluates each objection, in the context of the five step Sequential Evaluation Process.

*The five step assessment*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

*Evaluating Plaintiff's mental health impairment at steps two and three*

As set forth in the ALJ's opinion, at step two, the ALJ determined that Plaintiff's medically determinable impairments of "rule out personality disorder and amnestic disorder" were nonsevere (R. 18). The ALJ detailed the record evidence regarding these impairments, noting:

> At the hearing, the claimant alleged that she has a bad memory and alleged having problems getting along with people. She believes that people are talking about her behind her back. She denied receiving any mental health treatment for which the medical evidence does not show any such mental health treatment.
>
> Review of the medical evidence shows that on May 20, 2010, the claimant underwent consultative exam with J. Jeff Oatley, Ph.D. she reported "chronic pain, fluid on the brain, and poor memory" limited her ability to maintain employment. Mental status exam revealed normal range of emotions. She reported being worried about "break ins" and crying when she thought about people trying to hurt her (problem for a long time). Her energy level was normal. Suicidal ideation was denied. Her fund of knowledge was limited. She reported that "my daddy" was the current President and could only name Kennedy as a recent U.S. President. She did not know that there were 52 weeks in a year or 12 months in a year. She was unable to count by 3's and could only name one in fifteen animals. She spelled world forwards correctly and omitted one letters backwards. She was able to follow the concentration with some difficulty. She was oriented to identity and location. She knew month and year but not date. She correctly recalled 4 sequential numbers, what she had for breakfast and medical/employment history. She correctly recalled two items immediately and no items five minutes later. She denied all forms of sensory distortions. Her gait was mildly unbalances [sic]. She was dressed appropriately and clean. Her attention span and activity level was appropriate. She showed some cognitive slowing. She signed her name in cursive with her left hand. Diagnoses included pain disorder (per medications), rule out hydrceophalus, rule out blindness of left eye, paranoid personality disorder and amnestic disorder. She was incapable of managing finances (Exhibit 6F).
>
> On June 23, 2010, DDS mental health specialist, Gildegardo Alidon, M.D. reviewed the available medical evidence and opined that the claimant's rule out paranoid personality disorder and amnestic disorder by history did not cause more than mild limitations in activities of daily living and in maintaining social functioning as well as moderate limitations in concentration, persistence or pace. The claimant would have difficulty learning and concentrating on complex and simultaneous demands. Her pace might be slower but she could maintain adequate pace in simple, repetitive tasks and would relate appropriately with others in a routine work setting (Exhibits 9F-10F).
>
> On September 15, 2010, DDS mental health specialist, Jorge Pena, Ph.D. reviewed the evidence and agreed with prior opinion found at Exhibits 9F-10F (Exhibit 21F).

(R. 17-18).

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's

physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).)  Applied here, the ALJ evaluated the conclusions of Dr. Oatley (R. 572-74) as well as the two non-examining state agency psychologists (R. 584, 590, 721) and gave "little weight to the opinion of the consultative examiners and DDS mental health specialists as the medical evidence does not show any treatment for mental health complaints and certainly insufficient to establish that the claimant has more than minimal mental limitations as a result of her alleged mental issues" (R. 24).  In her brief, Plaintiff alleges the ALJ failed to properly evaluate these opinions, in that the ALJ "completely ignored significant portions" of the opinions and his reason for according little weight to their conclusions is not supported by substantial evidence.

Plaintiff's contention that the ALJ "ignored" Dr. Oatley's observation that Plaintiff had slowed cognition and memory problems is belied by the decision excerpt quoted above. Too, the ALJ acknowledged limitations found by Dr. Alidon.  To the extent Plaintiff appears to contend that error is present because the ALJ did not itemize each and every notation within these opinions, she cites no authority for such a contention, and the law in this circuit is otherwise. *See Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," so long as the ALJ's decision is not a broad rejection which is not enough to enable the Court to conclude that the ALJ considered the claimant's medical condition as a whole).  The Court finds the ALJ fully considered the evidence with respect to Plaintiff's mental health impairment allegations.

As for whether the ALJ used the appropriate standard to weigh the opinions, Dr. Oatley was a one time consultant examiner.  As noted by the Commissioner, the opinion of a one-time examiner

is not entitled to special weight or deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *see also Anderson v. Commissioner of Soc. Sec.*, 441 Fed. Appx. 652, 653 (11th Cir. 2011) (per curiam). The weight afforded a consulting examiner's opinion depends upon his examining and treating relationship with the Plaintiff, the evidence the doctor presents to support his or her opinion, how consistent the opinion is with the record as a whole, the doctor's specialty, and other factors. *See* 20 C.F.R. §§404.1527(c), 416.927(c). The opinion of any physician may be discounted when objective medical signs and diagnostic testing do not support the opinion or if the opinion is inconsistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c), 416.927(c).

Here, as noted by the ALJ, the record is devoid of any mental health complaints made by Plaintiff to any of her doctors.[1] Although Plaintiff argues in conclusory fashion that the ALJ "cannot discount their opinions on this basis," (Brief, p. 24), the lack of any treatment received or sought with respect to an alleged ailment is appropriately considered by the ALJ. *See, e.g.,Rahman v. Astrue,* 1:11–CV–3094–JSA, 2012 WL 5507314, *10 -11  (N.D. Ga. Nov. 14, 2012) ("the ALJ was entitled to consider Plaintiff's failure even to mention her depression symptoms to doctors she was actually seeing, and their failure to note any. And the ALJ was entitled to consider her failure to otherwise seek treatment for these symptoms despite seeking treatment for other conditions . . ."); *Baxley v. Colvin,* No. 5:12cv69/EMT, 2013 WL 3107968, *8 -9  (N.D. Fla. June 17, 2013) (noting that the opinion of a psychologist who only examines a claimant one time need not be given great weight and finding good cause to discount psychologist's diagnoses of pain disorder and adjustment disorder because his report lacked objective support for his diagnoses and the record available to him did not reflect any mental health treatment history); and *Hall v. Astrue,* No. 5:07–CV–423–OC–GRJ; 2008 WL 5146548, 87 (M.D. Fla. Dec. 8, 2008) ("While not dispositive of the decision to discount the

---

[1] Indeed, the treating records include notations showing Plaintiff presenting as fully oriented, with no psychiatric difficulties. *See, e.g.*, R. 529, 530, 537, 628, 829.

opinion of Dr. Patel, the ALJ also appropriately noted the complete absence of any ongoing mental health treatment by Plaintiff"). Further, the ALJ's conclusion that the opinions were inconsistent with the record as a whole in that the medical evidence was "insufficient to establish that the claimant has more than minimal mental limitations as a result of her alleged mental issues" is supported by substantial evidence. *See Parsons v. Astrue*, No. 5:06cv217/RS-EMT, 2008 WL 539060, *6 (N.D. Fla. Feb. 22, 2008) (" . . . absence of treatment indicates that a mental impairment is non-severe").

To the extent Plaintiff's objection is simply meant to suggest that the evidence could support a different finding, it is not the task of the Court to reweigh the evidence. "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). As the conclusion of the ALJ with respect to the Plaintiff's mental health issues meets this standard it should not be disturbed. "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" 357 F.3d at 1240 n. 8 (internal quotation and citation omitted).

*Consideration of anemia, obesity and side effects*

Plaintiff also objects to the failure of the ALJ to consider whether anemia and obesity were severe impairments and in failing to make any findings regarding medication side effects. Upon review, no reversible error is present.

An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1521.[2] An impairment or combination of impairments is "not severe" when medical or other

---

[2] Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. 20 C.F.R. § 404.1521(b).

evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. A mere diagnosis is insufficient to establish that an impairment is severe. *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002). "The severity of a medically ascertained impairment must be measured in terms of its effect upon [a claimant's] ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *Id., citing McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). A claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on a claimant's ability to perform basic work activities.

As Plaintiff notes, her conditions of anemia and obesity were not included as severe impairments at step two. With respect to anemia, the medical records reflect the diagnosis, and Plaintiff testified that she has anemia and undergoes treatment for it, which "keeps [her] blood up to where it should be" (R. 45-46, 449, 494, 509, 512, 790, 907, 811, 835). The ALJ noted the diagnosis and her iron therapy, but concluded that it caused no more than minimal functional limitations, and was therefore non-severe (R. 17). This finding is supported by substantial evidence. Other than citing to the evidence establishing the diagnosis and treatment, Plaintiff points to no evidence showing that her anemia had any effect upon her ability to work.

Similarly, with respect to obesity, the medical records do not indicate any functional limitations from this condition and, indeed, Plaintiff identifies none in her brief or her applications for disability. While the ALJ should have explicitly noted it, absent any evidence of functional limitations arising from the condition, any error is harmless. *See, e.g, Moore v. Barnhart*, 405 F.3d 1208, 1213, n. 6 (11th Cir. 2005) ("the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."); *Cuong H. Mai v. Astrue*, No. 8:09–cv–1432–T–TBM, 2010 WL 3610445, *8 (M.D. Fla. Sept. 13, 2010) ("In

any event, Plaintiff wholly fails to identify functional limitations actually caused by his weight that would prevent him from performing the sedentary work determined by the ALJ" - remand unwarranted).

Plaintiff next asserts that the ALJ erred in failing to properly evaluate the side effects of her medications. The ALJ has a duty to elicit testimony and make findings regarding the effect of prescribed medications upon the ability to work. *Cowart v. Schweiker,* 662 F.2d 731, 737 (11th Cir. 1981). The Commissioner's Regulations require the ALJ to consider the side effects and effectiveness of medications. 20 C.F.R. § 404.1529(c)(3)(iv). Plaintiff testified that some of her medications make her sleepy (R. 54), nauseous or dizzy (R. 55). She contends that, while the ALJ "noted . . . side effects in passing," he made no findings on the issue, warranting remand.

As acknowledged by Plaintiff, the ALJ did not ignore the allegations of side effects, but made explicit reference to these allegations in his determination (R. 21). With respect to findings regarding the effect of side effects on the ability to work, the ALJ evaluated the claimed side effects in the context of the credibility determination, noting that Plaintiff "initially denied any side effects from her medications but later testified that they cause her to be sleepy, dizzy and nauseated" (R. 21). After discussing the evidence, the ALJ made a finding with respect to Plaintiff's "alleged symptoms," determining that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.* This finding, to the extent it includes an implicit rejection of disabling limitations due to side effects of medication, is supported by substantial evidence.

As noted by the ALJ, Plaintiff's reports regarding her medications are conflicting. At hearing, Plaintiff twice denied any side effects from her medications (R. 44, 54), before agreeing with counsel that her medications made her sleepy, dizzy and nauseous (R. 55). In her applications for disability she sometimes noted side effects of dizziness, drowsiness, headache (R. 280) and sometimes did not

(R. 294). Importantly, Plaintiff does not cite any reports where she complained of disabling side effects *to her physicians.*[3] Indeed, as noted by the ALJ (R. 24), on August 7, 2011, three months prior to the hearing, she denied to her doctor that she was experiencing any side effects, including nausea, vomiting or drowsiness (R. 839). The Court finds the ALJ applied the proper standards and his credibility determination is supported by substantial evidence.

*Right eye limitations*

Plaintiff next asserts that the ALJ erred at steps four and five in failing to adequately consider her "significant right eye limitation." At step two, the ALJ found that Plaintiff had the severe impairment of, among other impairments, left sided blindness and bilateral optic atrophy secondary to pseudo tumor cerebri (R. 22-23). Plaintiff contends that, despite this impairment, the ALJ included no right eye limitations in the RFC, nor did he include any in the hypothetical posited to the vocational expert. Upon review, no reversible error is shown.

A step two finding and an RFC finding are two different creatures. *See Augusto v. Commissioner of Social Sec.,* No.6:06–cv–1889–Orl–DAB, 2008 WL 186541, at *4 (M.D. Fla. Jan.18, 2008) ("The ALJ's determination that Plaintiff's depression is "severe" at step two does not equate with a finding that [it] significantly impacted her ability to do work at step five."). "This step acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, *whether or not it qualifies as a disability* and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (emphasis

---

[3]While Plaintiff cites to certain records as showing "some nausea caused by medications (R, 351), dizziness (R. 481), lightheadedness (R. 483) and nausea (R. 669)," the records cited do not show that these claimed maladies were medication side effects that occurred in the pertinent time period. Plaintiff's nausea was deemed "more likely" reflux and she was given Tums (R. 351-352); the dizziness and lightheadedness were noted in an ER record dated prior to the alleged onset (R. 481-483), and were deemed mild and related to a medication that Plaintiff did not claim to be taking during the relevant period (R. 248); and there is no indication in the record dated July 16, 2010, that the nausea complained of was due to a medication side effect (R. 669). Regardless, it appears that the symptoms were mild as Plaintiff left the ER that day against medical advice, as she had "personal things to do at home" (R. 673).

-11-

added).  A step two finding is thus not a finding of disabling limitations; rather, it reflects the existence, and not the full extent, of a more than minimal impairment or combination of impairments.

In formulating the RFC at the next step, the ALJ must fully account for all credible limitations arising from all impairments.[4]  In formulating the RFC here, the ALJ detailed the evidence with respect to Plaintiff's vision difficulties, noting, among other things, that: "Prior to the shunt, she did have problems with her vision and is now unable to see out of her left eye. She stated that her vision has changed in her right eye (cannot see as well in her right eye) and her eyes water" (R. 20); "just prior to the alleged onset date, the claimant had complaints of visual disturbance and headaches for which she treated with Dr. Ortolani (neurological) and Dr. Ge (Premier Eye Clinic)" (R. 21); following placement of the shunt, medical records reveal "her eyes were coming along" (R. 21-22); she continued to follow with Dr. Ge for her bilateral disc edema of her eyes on a monthly basis, and, in follow up with Dr. Vinas "in April 2010 [,] noted that she had recovered from the shunt without complications with improved vision" (R. 22).  The ALJ noted the results of the consultative eye exam, which showed the bilateral optical atrophy (R. 22).  The opinion reflects that the ALJ considered the full extent of Plaintiff's vision difficulties.

Although Plaintiff complains that the ALJ did not include "right eye limitations" in the RFC, there is no showing how the functional limitation arising from a "right eye" impairment differs from the functional limitations (blurred and decreased vision) found by the ALJ and considered in the formulation of the RFC.  As noted by the ALJ:

> On October 15, 2010, State Agency physician, Audrey Goodpasture, M.D. reviewed the available medical evidence and opined that the claimant was capable of light work restrictions but precluded from climbing ladders, ropes or scaffolds. She had limited

---

[4]The ALJ has a duty to consider all impairments, both singly and in combination, when making an analysis of disability.  20 C.F.R. § § 404.1523 and 416.923.

-12-

>depth perception and field of vision. She was to avoid even moderate exposure to hazards (machinery and heights, etc.) (Exhibit 23F).

(R. 23).

The ALJ gave this opinion some weight (R. 24). In deference to Plaintiff's limited depth perception and field of vision, the RFC includes Dr. Goodpasture's limitation against climbing ladders, ropes, or scaffolds; working around unprotected heights or moving, hazardous machinery; or around cutting hazards such as using sharp knives (R. 19). There is no showing of any separate "right eye" limitation that was not adequately considered, and accommodated, by the ALJ.

Although Plaintiff contends that "right eye limitations would further reduce [her] ability to work and could support a finding of disability," (Brief at p. 14), she points to no record evidence in support of this. By contrast, the ALJ noted that, despite her alleged limitations, Plaintiff did work for 4-5 months after her alleged onset date (although not to the level of substantial gainful activity) (R. 21, 24-25). She was found capable of other activities which require vision, as well. Plaintiff stated that she watches television and drives (R. 18). She is able to read and write (R. 20), go grocery shopping (R. 21), and perform activities of daily living without assistance (R. 22). Further, Plaintiff does not contend that her visual impairment meets the Listings.

As for the determination at the final step of the sequential evaluation, Plaintiff contends that the ALJ erred in failing to include right eye limitations in addition to the left eye limitations in the hypothetical question posited to the vocational expert, noting that: "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). An ALJ, however, is "not required to include findings in the hypothetical that the ALJ [has] properly rejected as unsupported." *Crawford v. Commissioner of Social Sec.*, 363 F. 3d 1155, 1161 (11th Cir. 2004). As noted above, there is no separate and greater functional limitation with respect to right eye only vision shown here. Also, the ALJ specifically included a restriction with respect to

-13-

Plaintiff's vision difficulties in the hypothetical (Doc. 63). Although the hypothetical included only "the individual is blind in the left eye," vision difficulties were explored by counsel at hearing:

> Q I had a question about the first hypothetical. You said she couldn't work as an assembler because of the eyesight.
> A I'd be a little hesitant to -- as an assembler.
> Q I appreciate that but my question is wouldn't that also have an effect on the packer position?
> A It's not as required as much. You can still have a visual impairment to pack something. It's not as critical as an assembler.
> Q Would it have a reduction on the job numbers?
> A Very slight.

(R. 65).

As the vocational expert testified as to jobs that could be done even with a visual impairment and Plaintiff has not shown any functional limitation with respect to her vision greater than that found by the ALJ, no error is shown.

Although it is evident that Plaintiff has challenges and difficulties on many fronts, the only issue before the Court is whether the decision by the Commissioner is adequately supported by the evidence and was made in accordance with proper legal standards. As the Court finds that to be the case, it **recommends** that the decision be affirmed.

## Conclusion

For the reasons set forth above, it is **respectfully recommended** that the administrative decision be **AFFIRMED.** If this recommendation is adopted, the Clerk should be directed to enter judgment accordingly, terminate all pending matters, and close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 6, 2014.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy